IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANDY V. JOSEPH,

    Petitioner,

vs.	Case No. 4:10cv377-SPM/WCS

KENNETH S. TUCKER, SECRETARY,
FLORIDA DEPARTMENT OF CORRECTIONS,[1]

    Respondent.

_____/

## REPORT AND RECOMMENDATION TO DISMISS § 2254 PETITION

Petitioner filed an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 7.  Respondent filed a motion to dismiss the petition as untimely. Doc. 15.  References to exhibits are to those in support of the motion to dismiss, filed

---

[1] On August 24, 2011, Kenneth S. Tucker succeeded Edwin G. Buss as the Secretary of the Florida Department of Corrections, and is automatically substituted as Respondent.  Fed.R.Civ.P. 25(d).

electronically as docs 15-1 through 15-10 in ECF (Electronic Case Filing). Petitioner filed a reply. Doc. 16.

Petitioner challenges his conviction out of the Second Judicial Circuit, Leon County, case number 2002 CF 2405, for attempted first degree murder (count one) and shooting at, within, or into an occupied vehicle (count two). Doc. 7, p. 1; see also Exs. G and E (2003 and 2006 judgments, including the case number). He entered a plea of nolo contendere, was sentenced on January 11, 2006, and did not appeal. Doc. 7, pp. 1-2. Petitioner raises two grounds in support of his § 2254 petition: that there is newly discovered evidence of police and lab reports and he would not have entered a plea had he known of this evidence (ground one), and that his plea was involuntary and he was denied due process because the state failed to disclose a police report favorable to the defense (ground two). *Id.*, p. 4.

Specifically, in ground one, Petitioner challenges the reasoning of the state court that, even assuming the prosecution could not establish the chain of possession of the gun following the shooting, the prosecution could have connected him to the gun through eye witness testimony and other evidence. *Id.*, p. 4(a) (p. 5 of the document as filed in ECF).[2] He claims the state courts "misapprehended and overlooked" the fact that he claimed actual innocence, and that credibility of witnesses is a determination to be made by a jury. *Id.* He questions the state court's reasoning in rejecting his newly discovered evidence claims, asserting that if he had known of lab reports about the firearm he would not have entered a plea. *Id.*, pp. 5-8.

---

[2] Hereafter, references to pages of the petition will be to those assigned to the scanned document in ECF.

In ground two Petitioner claims the prosecution failed to disclose a police report which would have exonerated him, in violation of Brady.³ *Id.*, p. 9-10. As noted in the order directing amendment, Petitioner apparently has not seen the allegedly newly discovered evidence (crime scene photos), but he unsuccessfully requested them at some point after obtaining the police report. Doc. 5, p. 4.

For relief, Petitioner asks this court to reverse his convictions with an instruction to the trial court "to either attach portions of the record which conclusively refutes [his] newly discovered evidence claim or hold an evidentiary hearing to determine the actual disputes of the claims." Doc. 7, p. 12.

Respondent seeks dismissal of the petition as untimely, arguing in the alternative that Petitioner's claims were not properly exhausted and are procedurally barred. Doc. 15. Petitioner does not take issue with Respondent's summary of his procedural history, but disputes the legal rationales of Respondent and the state courts. Doc. 16. The procedural history below is primarily taken from the history set forth by Respondent, with some additional references to the record. References to dates of filing are to the dates Petitioner delivered a document to prison officials for mailing.

Petitioner was originally sentenced pursuant to a plea agreement on May 1, 2003. Doc. 15, pp. 1-2. The agreement was that Petitioner would receive a twenty year sentence, suspended upon successful completion of imprisonment for three years (the

---

³ Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecution may not withhold favorable evidence, whether exculpatory or impeachment evidence, whether specifically requested by the accused or not. 373 U.S. at 87, 83 S.Ct. 1194; United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Case No. 4:10cv377-SPM/WCS

minimum mandatory sentence), followed by 17 years probation with the 17 year term mandatorily imposed upon violation of probation. *Id.* Petitioner did not appeal. *Id.*, p. 2.

Petitioner completed the mandatory three year term and was released to probation. *Id.* On January 11, 2006, he entered a plea agreement admitting violations of probation, and was sentenced to twenty years (for the violation of probation and new charges) with credit for the time he had served. *Id.*; *see also*, Exs. I (transcript of proceeding) (doc. 15-2, pp. 10-32) and J (doc. 15-2, pp. 34-41) (judgment). He did not appeal. Doc. 15, p. 2.

Petitioner filed a post conviction motion pursuant to Fla.R.Crim.P. 3.850 on April 11, 2006, challenging the initial plea. Doc. 15, p. 4. The motion was denied. *Id.* and Ex. K (doc. 15-3, pp. 82-84 in ECF) (order). The court found that the record conclusively refuted the claims, and Petitioner was bound by his written plea agreements and sworn statements to the court. Ex. K, (doc. 15-3, pp. 82-83). "In addition to the above reasoning," the court found, "the motion should also be denied because it is untimely," as filed more than two years after the time to appeal the original sentence had expired. *Id.*, (doc. 15-3, pp. 83-84). Petitioner appealed, denial of the Rule 3.850 motion was affirmed, and the mandate issued on April 7, 2008. Doc. 15, pp. 2-3.

Petitioner filed a motion for arrest of judgment on June 12, 2008, which was denied as untimely on June 23, 2008. Doc. 15, p. 3. The denial was not appealed. *Id.*

Petitioner filed a petition for writ of habeas corpus on August 22, 2008. *Id.*: Ex. R (doc. 15-6, pp. 4-28). By order of September 5, 2008, the motion was deemed a motion

for post conviction relief and transferred to the sentencing court for filing in the criminal case.  *Id.*; Ex. R (doc. 15-6, pp. 78-79).  By order of September 15, 2008, post conviction relief was denied as untimely under Rule 3.850.  Doc. 15, p. 3; Ex. R (doc. 15-6, pp. 80-81).  As Petitioner challenged the more recent plea agreement and sentence following revocation of probation, the court commenced the two year period from February 11, 2008 (when the time for appealing the later sentence expired), and found no exceptions to the time limit.  Ex. R (doc. 15-6, pp. 78-79).  Denial of relief was affirmed and the mandate issued on February 18, 2009.  Doc. 15, p. 3.  Petitioner filed a separate appeal challenging treatment of his habeas petition as a Rule 3.850 motion and raising additional claims, but the appeal was dismissed as duplicative of the Rule 3.850 appeal.  *Id.*  The mandate issued on May 27, 2009.  *Id.*

Petitioner filed another Rule 3.850 motion claiming newly discovered evidence on August 21, 2009.  Doc. 15, pp. 3-4.  By order of February 16, 2010, the trial court denied the motion as untimely.  *Id.*, p. 4.  The court noted that Petitioner was challenging the original 2003 plea, and the motion far exceeded the two year deadline of Rule 3.850.  *Id.*; Ex. Y (doc. 15-9, pp. 16-18).  The court rejected the claim that the motion was an exception to the two year time limit based on newly discovered evidence, finding the newly discovered evidence claim without merit.  The court reasoned: "[Petitioner] could have inquired years ago as to how the gun turned up.  More importantly, prior to entering his plea, [he] knew that the gun had been found," so any "concerns about how the gun turned up and whether the State could 'connect' him to the gun, he could easily have resolved those concerns before he pled to shooting the gun at the victim's car in an attempted murder.  Instead, [he] affirmed that the plea was in his

best interest." Ex. Y (doc. 15-9, p. 17) (citations to record omitted). The court noted that "even assuming [Petitioner] could only recently have discovered how the gun was found, the claim is denied." *Id.*, (doc. 15-9, p. 18). Denial of relief was affirmed, rehearing denied, and the mandate issued on May 25, 2010. Doc. 15, p. 4.

The initial § 2254 petition was filed in this court on August 6, 2010. Doc. 1.

There is one year limitations period for filing a § 2254 petition, which runs from the latest of the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The one year period is tolled for the time during which a "properly filed" application for relief is pending in state court. § 2244(d)(2). The time may also be equitably tolled, but "only if a petitioner establishes *both* extraordinary circumstances and due diligence." Diaz v. Secretary for Dept. of Corrections, 362 F.3d 698, 702 (11th Cir. 2004) (citation omitted, emphasis in original).

Respondent first asserts that the judgment became final, for purposes of § 2244(d)(1)(A), when the time to appeal the original sentence expired, 30 days after

sentencing on May 1, 2003.[4]  Doc. 15, pp. 5-6.  If the time commenced from that date, the § 2254 petition had to be filed no later than June 2, 2004.[5]  Petitioner filed nothing in state court to toll the time under § 2244(d)(2) until his first Rule 3.850 motion, which was filed long after the one year expired.

I do not agree that the one year commenced on this date, however, but (as also argued by Respondent) agree the petition is untimely.  Petitioner's judgment became final, for purposes of § 2244(d)(1)(A), thirty days from entry of judgment following the revocation of probation.  Fla.R.App. P. 9.140(b)(3); Ferreira v. Secretary, Dept. of Corrections, 494 F.3d 1286, 1293 (11th Cir. 2007), *cert. denied*, 555 U.S. 1149 (2009) (commencing the one year period from the date of resentencing, where state prisoner was resentenced as a result of a successful Fla.R.Crim.P. 3.850 motion), *applying* Burton v. Stewart, 549 U.S. 147, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007) (other citations omitted).  In an unpublished opinion, the Eleventh Circuit applied Ferreira to find that "the district court should have focused on the Circuit Court's order revoking [petitioner's] probation and its reimposition of the" sentence, running the time from when *that* judgment became final.  Green v. Price, 439 Fed.Appx. 777, 783 (11th Cir. Aug.1, 2011) (remanding as the record was insufficient to make final determination of timeliness).  *But see* Jeter v. Secretary, Dept. of Corrections , __ F.Supp.2d __, 2011 WL 4551480,

---

[4] *See*, Gonzalez v. Thaler, __ S.Ct. __, 2012 WL 43513, 9-10 (U.S. January 10, 2012) (clarifying that a judgment is final when the time for seeking review expires, that the date of expiration depends on whether the petitioner sought direct review, agreeing that where the defendant did not appeal to the highest state court, his judgment became final when the time to file that appeal expired).

[5] The 30 days ended on Saturday, May 31, 2003, so the one year ran from Monday, June 2, 2003.

\*4 (N.D. Fla. September 28, 2011) (granting a certificate of appealability as to whether, under Ferreira, "a person whose probation is revoked [rather than resentenced as in Ferreira] has a new one-year limitations period for a § 2254 petition that asserts a constitutional violation in connection with the underlying conviction and raises no other challenge to the revocation and resulting sentence.").[6]

If the one year period was commenced by resentencing on violation of probation, then the one year period under § 2244(d)(1)(A) ended on Monday, February 12, 2007.[7] I agree with Respondent that the motions filed in state court and dismissed as untimely could not toll the one year period. The Rule 3.850 motion was filed on April 11, 2006, and denied as untimely on May 9, 2007. In its reply to the motion dated January 18, 2006, the State argued that the motion was untimely. Ex. K (doc. 15-3, pp. 49-54 in ECF). The state opposed the argument that the motion fit an exception to the time limit for claims based on facts unknown to the movant or his counsel, which could not have been previously discovered with due diligence. Ex. K (doc. 15-3, pp. 50-53).[8] If the exception to the time limit was found to apply, it was argued that the claim raised was refuted by the record. *Id.*, (doc. 15-3, p. 53). The motion was denied as untimely and without merit on May 9, 2007. Ex. K (doc. 15-3, pp. 82-84).

---

[6] Jeter is assigned case number 5:10cv189-RH/GRJ in this court, and the order of September 28, 2011, is doc. 35 in the file. The appeal remains pending.

[7] The sentence became final on February 10, 2006 (when the time for appeal expired); February 10, 2007, was a Saturday.

[8] Petitioner claimed it was previously unknown to him was that he would have to serve probation after serving the three year minimum mandatory term, a claim which was clearly contradicted by the record. Ex. K (doc. 15-3, pp. 50-53).

Case No. 4:10cv377-SPM/WCS

In Allen v. Siebert, 552 U.S. 3, 128 S.Ct. 2, 169 L.Ed.2d 329 (2007), the Court said:

> We therefore reiterate now what we held in [Pace v. DiGuglielmo, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)]: "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." 544 U.S. at 414, 125 S.Ct. 1807 (quoting [Carey v. Saffold, 536 U.S. 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)], alteration in original). Because Siebert's petition for state postconviction relief was rejected as untimely by the Alabama courts, it was not "properly filed" under § 2244(d)(2). Accordingly, he was not entitled to tolling of AEDPA's 1-year statute of limitations.

552 U.S. at 7, 128 S.Ct. at 4-5; *See also,* Walton v. Secretary, Florida Dept. of Corrections, 661 F.3d 1308, 1310 (11th Cir. 2011) (quoting this language in part).

If the state court deems a motion untimely, then "that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits." Carey, 536 U.S. at 226, 122 S.Ct. at 2141 (citation omitted).

In Pace, the Court rejected the argument that where there are judicially reviewable exceptions to a time limit, then the limit is not a condition to filing for purposes of whether a motion is "properly filed" under § 2244(d)(2). 544 U.S. at 412-415, 125 S.Ct. at 1811-1812. It was argued that this was unfair, since a motion could be litigated through the state courts for years in good faith, only to find later that the motion was not "properly filed" for purposes of § 2244(d)(2). This argument was rejected:

> A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. *See* Rhines v. Weber, [544 U.S. 269, 278, 125 S.Ct. 1528, 1531, 161 L.Ed.2d 440 (2005)]. A petitioner's

> reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court. *Ibid.* ("[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics," then the district court likely "should stay, rather than dismiss, the mixed petition").

544 U.S. at 416-417, 125 S.Ct. at 1813-1814.

The first Rule 3.850 motion was not properly filed and did not toll the period. The motion for arrest of judgment was denied as untimely and did not toll the period. Moreover, even if "properly filed" on June 12, 2008, it could not toll the period which had already expired. The same is true for the 2008 petition for writ of habeas corpus which was construed as a Rule 3.850 motion and denied as untimely.

Petitioner's claim of newly discovered evidence, which would extend the date on which the one year period commenced under § 2244(d)(1)(D), is unsupported. He claims to have raised this newly discovered evidence claim, as to police reports and lab work, in his Rule 3.850 motion filed on August 25, 2009. Doc. 7, pp. 2-3. The alleged police and lab reports were not submitted with the initial or amended petitions in this case. Docs. 1 and 7. The referenced Rule 3.850 motion is part of Ex Y (doc. 15-8, pp. 34-43; attachments at doc. 15-8 pp. 44-76, doc. 15-9, pp. 1-12). Petitioner received a response to his public records request dated May 19, 2009, enclosing "copies of the only photos in our case file and the FDLE Lab report for Lab #20030100063." Ex. Y (p. 15-8, p. 45). The FDLE lab report was dated January 9, 2003. *Id.* (doc. 15-8, pp. 46-47). He wrote a letter to the Custodian of Records, Tallahassee Police Department (TPD), on May 20, 2009; it was stamped "COMPLETED" by the TPD on June 16, 2009.

*Id.*, (doc. 15-8, p. 47).[9] The TPD offense form signed July 20, 2002, is attached (15-8 pp. 48-50).

A letter of July 28, 2009, acknowledges that Petitioner's payment for the documents was received and attached the documents. 15-8, p. 51. Attached were various FDLE documents from 2002 and 2003. Ex. Y, 15-8 pp. 52-76. 15-9 pp. 1-12.

The motion was denied as untimely, the court rejecting the claim of newly discovered evidence. Ex. Y (doc. 15-9, pp. 16-18) (order of February 16, 2010). In addition to noting that some of the claims were baseless, the court said:

> Defendant could have inquired years ago as to how the gun turned up. More importantly, prior to entering his plea, Defendant knew that the gun had been found. Thus, if Defendant had concerns about how the gun turned up and whether the State could "connect" him to the gun, he could easily have resolved those concerns before he pled to shooting the gun at the victim's car in an attempted murder. Instead, Defendant affirmed that the plea was in his best interests. The Court found that Defendant's plea was supported by a factual basis and was voluntarily, intelligently, and knowledgeably entered.

15-9 pp. 17-18 (record references omitted).

Similarly here, Petitioner has alleged no specific facts to show the information could not have been previously discovered through the exercise of due diligence. He waited until 2009 to send written requests for 2002 and 2003 records. He asserts that the state court overlooked the fact that he "had made several attempts to obtain the police and lab report from the Clerk of Court, TPD, and the State Attorney['s] Office, all of which to no avail," and he did not receive them until he submitted public records

---

[9] Petitioner wrote another letter to the custodian on May 22, 2009, asking for police reports, evidence logs, chain of evidence forms, and crime scene photos. Ex. Y (doc. 15-9, p. 12). i

requests. Doc. 7, p. 6. He also claims that he knew the gun had been found but "counsel erroneously informed him that the gun had been involved in a[n] armed robbery" that might prejudice the defense at trial, and it was not until after he received the records in 2009 that he knew of these reports and that counsel misinformed him. *Id.*, pp. 6-7.

Petitioner was originally sentenced in 2003, challenges the 2003 proceedings, and the purported "newly discovered evidence" was available at the time of those proceedings. That Petitioner made "several" unspecified "attempts" to obtain documents before submitting written requests in 2009 does not establish diligence at all. That his counsel might have erroneously informed him of something at the time of his plea does not stop the limitations period from commencing unless and until such time as he decides to investigate. Most claims of ineffective assistance of counsel in the context of a guilty plea are based upon allegedly erroneous or incorrect advice given by counsel, and due diligence requires investigation of the case to see if a claim can be made. If any discovery, no matter how many years later, of erroneous information or misadvice was deemed a "factual predicate" which could not "have been discovered through the exercise of due diligence," the exception would devour the rule.

Finally, Petitioner claims that it was only when he received the report in June of 2009 that he learned of the reports in support of his claim. Doc. 7, pp. 7-8. The letter from the FDLE including the documents was dated July 28, 2009. Assuming Petitioner received the documents that Friday or the following Monday (July 31 or August 3, 2009), Petitioner filed his § 2254 petition on August 6, 2010, more than one year later. The Rule 3.850 proceedings during this period did not toll the time, because (as

Case No. 4:10cv377-SPM/WCS

previously stated) motions deemed untimely by the state court are not properly filed for purposes of tolling under § 2244(d)(2). In the unlikely event that Petitioner could show due diligence here, the § 2254 petition should be dismissed as untimely.

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

It is therefore respectfully **RECOMMENDED** that the motion to dismiss (doc. 15) be **GRANTED**, and the amended § 2254 petition for writ of habeas corpus filed by Andy Joseph, challenging conviction and sentence imposed by the Second Judicial Circuit, Leon County, case 2002CF2405, be **DISMISSED WITH PREJUDICE**, and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on January 31, 2012.


s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.